THE STATE, THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF SOMERSET, PROSECUTORS, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUNTERDON.

1. The supplement to the Bridge act, approved March 5th, 1884 (*Rev. Sup.*, *p.* 66), confers authority on any justice of the Supreme Court, to whom shall be presented a certificate such as is prescribed therein, to summarily inquire into and determine certain matters respecting bridges to be erected, repaired or rebuilt at the joint expense of two or more counties.

2. Such determination is that of a special statutory tribunal, subject to review under the provisions of the supplement to the Certiorari act. *Rev. Sup.*, *p.* 84, § 1.

3. The supplement to the Bridge act, approved April 18th, 1889 (*Pamph. L.*, *p.* 306), imposes on adjoining counties the duty of erecting, rebuilding, maintaining and keeping in repair, at their joint expense, suitable bridges over the waters of any stream, creek or river which is the dividing line between said counties, where the waters flow in one or more separate channels, with a proviso, that if it shall be necessary to erect a bridge at a point where the waters flow in more than one channel, the place where the waters divide shall not be more than five hundred yards from the place where they again join. *Held* that, if the proviso can be construed according to apparent intention, it limits the operation of the enactment to streams separating counties where the division into channels does not exceed five hundred yards; and *held*, further, that, upon such construction, the act is not local, but general, for it applies to all counties the same rule.

4. An inability to agree as to the location of a bridge coming within the provisions of the last mentioned act, certified to a justice, will give jurisdiction to inquire into and determine where the bridge shall be placed.

On *certiorari*.

The board of chosen freeholders of the county of Hunterdon presented to the Chief Justice a certificate that it was unable to agree with the board of chosen freeholders of the county of Somerset as to the location of a bridge proposed to be erected across a part of a stream known as the South branch of the Raritan river, said stream being the dividing line between said counties, and the Chief Justice fixed a time-

and place for a summary inquiry into the matter in dispute and directed a copy of his order to be served on the director of the Somerset board.

At the time and place fixed both boards appeared by counsel, and the Chief Justice, after inquiry, made an order fixing the location of the proposed bridge, and directing the two coun- ties to build it forthwith at their joint expense.

A *certiorari* was then allowed by him to bring up the last named order and the proceedings whereon it was based.

Argued at February Term, 1890, before Justices KNAPP and MAGIE.

For the prosecutors, *John A. Frech.*

For the defendants, *Paul A. Queen.*

The opinion of the court was delivered by

MAGIE, J. The order brought up by this writ is assailed as made without jurisdiction.

If power to make such an order exists, it is conceded that it must be found in the supplement to the Bridge act, approved March 5th, 1884. *Rev. Sup., p.* 66.

By the provisions of that supplement it is made lawful for one or both of two boards of chosen freeholders, who shall be unable to agree as to the location or character of any bridge proposed to be erected at their joint expense; or as to the materials of which such bridge shall be constructed ; or as to whether a bridge already erected, and out of repair, shall be repaired or shall be rebuilt; or as to the character or mate- rials of a bridge they decide to rebuild—to certify such fact to one of the justices of the Supreme Court, who is directed to summarily inquire into the matter or matters in dispute, and, within a specified time, to make an order deciding the same, which order he is to cause to be served on each board, and the act declares it shall be binding on them.

The proceedings before us disclose a certificate by one board of chosen freeholders of inability to agree with another board

about a single matter, viz., the location of a bridge proposed to be built at their joint expense over a part of a stream forming the boundary between their counties. By the express terms of the supplement above referred to, such a certificate conferred on the justice to whom it was presented authority to proceed in a summary way, and, on inquiry, to decide the certified matter in dispute so as to bind both boards.

Counsel have not contended that the legislature could not confer such jurisdiction in such a mode.

The erection and maintenance of bridges in general is devolved as a duty upon the counties which the boards of chosen freeholders represent. Obviously, where streams divide counties, the duty must be a joint one. If, in performing this joint public duty, two boards are unable to agree as to the mode of performance, it cannot admit of doubt that the legislature might (unless hampered by constitutional restrictions) prescribe how a particular bridge should·be located, and of what and how it should be built. By general acts, rules for such cases might be prescribed. It has been held that the legislature might, prior to the constitutional amendments, impose on a township the expense of making or maintaining certain roads, or transfer to a township the burden of such expense originally undertaken by a particular district. *Rader* v. *Township of Union*, 10 *Vroom* 509; *S. C.*, 12 *Id.* 617. The exercise of similar power by general acts cannot now be objectionable.

If the legislature may intervene to settle a dispute, which impedes the performance of a duty of the highest importance to the public, I perceive no reason why it may not create a tribunal to which such a dispute may be submitted for determination. The functions of such a tribunal would not be wholly judicial. They may be considered *quasi* judicial, like those of municipal corporations in proceedings to pave or sewer streets, where the expense may be imposed on individuals benefited. Under this act the determinations are as to the mode in which an improvement for the public benefit is to be made, at the expense of corporations representing the public.

Notice to the corporations to be affected is doubtless necessary, and the act creates a special statutory tribunal within the meaning of the amendment to the Certiorari act, approved February 17th, 1881. *Rev. Sup.*, *p.* 84. The determination may be reviewed on questions of fact as well as of law, and must be reversed or affirmed according to the justice of the case.

But the power to be exercised under this act is neither executive or administrative, such as, it has been held, the legislature cannot impart to a judicial officer. *In re Cleveland*, 22 *Vroom* 311. It is of a judicial nature, and the constitution does not forbid its exercise by a judicial officer.

For these reasons, I think there is no objection to the act which confers such powers.

But prosecutors contend that the facts disclosed by the affidavits show that a case for making this order did not exist.

The facts shown are these : The South branch, which is the boundary between the counties of Somerset and Hunterdon, formerly flowed, at the place in question, in a single channel, spanned by a bridge erected by both counties. About a year before these proceedings were commenced, the stream, during high water, cut through the causeway leading to one end of that bridge. Since then water regularly flows through that cut in the causeway whenever the stream rises above a certain height ; at other times, although water does not flow through, it stands in the cut across the causeway. The passage over the cut has heretofore been effected by temporary bridges built by individuals. That it cannot be used without a bridge, is made clear by the evidence.

If, when the bridge was originally built in this place, the South branch had been flowing in two channels, such as are now shown to exist, I apprehend that it would have been the joint duty of the two counties to bridge both channels. As the stream has broken up into two channels, that circumstance would, in my judgment, impose a like duty, from the time that the new channel required a bridge for crossing.

But we are not left to inference in respect to this duty. By a further supplement to the Bridge act, approved April 18th, 1889 (*Pamph. L., p.* 306), the legislature has enacted, that where any stream, creek or river shall be the dividing line between two or more counties, the boards of chosen freeholders of said counties shall erect, rebuild, maintain and keep in repair, suitable bridge or bridges across the waters thereof at their joint expense, " whether the waters of such stream, creek or river shall flow in one or more separate channels or waterways," provided, that in case it shall be necessary to erect a bridge or bridges at a point where the waters flow in two or more channels, the place where the stream, creek or river divides shall not be more than five hundred yards from the place where the channels again join and flow as one channel.

If the language of this proviso be taken literally, it seems rather to be a prohibition on the operations of nature than a rule of conduct for the public corporations named. If construed according to the probable intent of the legislature, it operates to restrict the enacting clause to those divided channels which do not remain divided for a distance of over five hundred yards. Assuming this to be the proper construction, there is nothing in the objection, that this act is not general, but local, and so prohibited ; for the act applies to all counties the like rule under the like circumstances.

On this construction of the last mentioned act, it is admittedly operative at the place in question, for the affidavits show, conclusively, that the distance from the point where the waters of the South branch divide into two channels to the point where they again unite, is much less than five hundred yards.

A joint duty was therefore imposed on the two counties now before us, and an inability to agree to the location of a bridge, coming within the scope of that duty, duly certified, will give jurisdiction under the act of March 5th, 1884, *ubi supra.*

. Nor is the fact that the waters do not flow through this channel continuously, any obstacle to applying to it the rule prescribed by the act of April 18th, 1889, *ubi supra.* The place in question is obviously a channel or waterway through

which the waters of the South branch flow, although they do not flow therein every day of the year.

As before mentioned, notice to the corporations to be affected by the determination of the justice, though not prescribed, is yet required. In the case before us, notice was directed and the parties in fact appeared.

There is nothing therefore in the objections made affecting the validity of the determination of the Chief Justice, which must be affirmed.

On account of illness, Mr. Justice KNAPP took no part in the decision of this case.