## ALEXANDER L. MOREAU ET. AL. v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF MONMOUTH ET AL.

Argued June 9, 1902—Decided November 10, 1902.

1. The act to empower boards of chosen freeholders to acquire additional accommodations for holding the courts, approved March 5th, 1902, is unconstitutional.
2. Proceedings which were intended to rest upon that statute, whereby the responsibility for the expenditure of public moneys is cast upon a justice of the Supreme Court, should not be judicially supported by sections 2 and 4 of the Freeholders' act of April 16th, 1846, whereby such responsibility is cast upon the board of chosen freeholders, even though the proceedings, if purposely taken under the act of 1846, would be legal.

On *certiorari*.

Before Justices DIXON, HENDRICKSON and PITNEY.

For the prosecutors, *Ruliff V. Lawrence* and *Richard V. Lindabury.*

For the defendants, *Charles L. Corbin.*

The opinion of the court was delivered by

DIXON, J.    This *certiorari* is prosecuted to set aside certain proceedings taken in supposed pursuance of a statute approved March 5th, 1902 (*Pamph. L., p. 20*), intended to

empower boards of chosen freeholders to acquire additional accommodations for holding the courts. The chief ground of attack is that the statute is unconstitutional.

The leading provisions of the statute are that, as a preliminary step to the acquisition of such accommodations, the justice of the Supreme Court presiding in the judicial district of which the county forms a part, shall file with the clerk of the county his request, in writing, that the board of chosen freeholders should either purchase land and erect a building thereon or should lease a building at some place in the county other than the present county seat; that if he shall deem it advisable to purchase land and erect a building, he shall designate the location of the building and file the plans and specifications for the building, and if he shall deem it advisable to lease an existing building, he shall designate the building and specify the annual rental and the term of years of the lease; in all cases he is to specify the total amount of money to be expended in acquiring the property, except that the statute fixes a maximum beyond which the expenditures must not go. The statute does not impose upon the justice the duty of taking this preliminary step, but leaves the matter to his discretion.

The question to be now decided is, can a justice of the Supreme Court exercise such a function, in view of our constitutional provision, article 3, "The powers of government shall be divided into three distinct departments, the legislative, executive and judicial; and no person or persons, belonging to or constituting one of these departments, shall exercise any of the powers properly belonging to either of the others, except as herein expressly provided."

This question, we think, must be answered in the negative.

We take cognizance of the fact that in the county of Monmouth, where the present proceedings arose, there is a permanent court-house at the county seat, which affords sufficient accommodation to enable the constitutional courts to discharge their public duty, so that no occasion exists for invoking that power which the Supreme Court of Indiana, in *Board of Commissioners* v. *Gwin,* 136 *Ind.* 562, declared to be inherent in

constitutional courts, to provide themselves temporarily with quarters necessary for their sessions, a power springing from, and therefore limited by, the necessities of the case. The matters confided to the justice by this statute are whether, not the necessities of the courts, but the convenience of the public, makes an additional court-house desirable; whether a permanent or temporary court-house should be acquired, in what locality, outside of the present county seat, it should be situate, and of what style it should be, in order most to subserve the public convenience; and what expenditure therefor would best accord with the other demands upon the public treasury.

These matters, in our judgment, "properly belong" to the legislative department of government. They turn wholly on considerations of public policy with which the legislature must deal. They are of the same character as the question whether the interests of the people of the state would be promoted by levying a tax to pay bounties to volunteers for the civil war, of which the Court of Errors, in *State* v. *Demarest*, 3 *Vroom* 528, said the legislature was the sole judge; as the question respecting the rate of taxation that might be borne by a city without injury to its creditors (*Munday* v. *Rahway*, 14 *Id.* 338), the question as to what territory ought to be embraced in organizing a town (*In re Ridgefield Park*, 25 *Id.* 288), the question respecting the proper route through a municipality to be granted for a telephone line (*New York and New Jersey Telephone Co.* v. *Bound Brook*, 37 *Id.* 168), and the question whether a particular municipality should be divided into wards (*Gilhooly* v. *Elizabeth, Id.* 484), all of which questions this court has held to be for the legislature exclusively. We do not mean that the legislature itself must pass directly upon them, for undoubtedly it may delegate their decision to appropriate bodies, but persons belonging to or constituting the executive or judicial department of government are by the constitution precluded from such delegation.

The cases cited by the defendants to support the opposite view are not in point.

It clearly does not antagonize this clause of the constitution for courts to designate the times at which they will meet, though possibly a doubt may be suggested whether the legislature can imperatively fix those times.

To determine how conflicting easements are to be enjoyed (*Delaware, Lackawanna and Western Railroad Co.* v. *Erie Railroad Co.*, 6 *C. E. Gr.* 298; *Palmyra* v. *Pennsylvania Railroad Co.*, 17 *Dick. Ch. Rep.* 601; *S. C.*, 18 *Id.* 799), to decide a dispute between contending boards of chosen freeholders as to the location of a bridge connecting their counties (*Somerset County* v. *Hunterdon County*, 23 *Vroom* 512), to ascertain the compensation due to an officer of the court appointed to aid the court in performing its functions (*Lindabury* v. *Ocean County*, 18 *Id.* 417), are all judicial or *quasi* judicial questions, and as such may legally be devolved upon persons belonging to the judicial department of government. So there are many matters, not capable of precise classification, which do not *properly belong,* in the constitutional sense, to any one department exclusively, and may be brought, either by statute or by circumstances, within the province of any of the departments. *Paul* v. *Gloucester*, 21 *Id.* 585.

We deem this statute unconstitutional.

But even if we thought it valid, we could not support the present proceedings upon it.

The case shows clearly that the learned justice presiding in the district declined to exercise the powers delegated by the act. It is not necessary to recite at length his correspondence with the board of chosen freeholders of the county; the following extract from his letter of April 21st, 1902, will suffice. After referring to the questions to be decided by him, he wrote: "The freeholders are the body to whom should be committed all these questions. They represent the people of the county. So far as I am concerned, I shall leave the whole matter with the board." The position thus indicated he maintained throughout, not assuming any of the responsibility which the statute would devolve upon him, but merely giving his formal acquiescence and request for such action as the

board had previously determined to take.    Such a course had no legal warrant.

The defendants further insist that the powers exercised by the board of chosen freeholders are justified by the second and fourth sections of the Freeholders' act of April 16th, 1846. *Gen. Stat., p.* 410.

We think, however, that the powers there conferred should not be resorted to for the support of the present proceedings. These proceedings were evidently intended by the board to depend upon the statute of 1902, under which the responsibility of determining whether further accommodations for the courts should be acquired at the expense of the county was cast upon the presiding justice.    They presented an appearance of compliance with that statute, which might satisfy the board that such responsibility was being borne, although in fact it was not.    But under the act of 1846 that responsibility rested indubitably upon the board alone, yet in these proceedings the board seems not to have consciously assumed it.    Unless it does so assume it, the people of the county should not be charged with the burden entailed by the acquisition of a new court-house.

The proceedings under review are set aside, with costs.