# CIRCUIT COURT OF BALTIMORE CITY.

Filed September 22, 1896.

JOHN S. ZEILER

VS.

ALCAEUS HOOPER, MAYOR, ETC.

*Steele, Semmes & Carey* for plaintiff.

*Thomas G. Hayes* and *Blakistone & Blakistone* for defendants.

HARLAN, J.—

The plaintiff in this case rests his right to relief upon the invalidity of the ordinance of the Mayor and City Council, granting to the Central Railway Company the right to lay tracks upon Wolfe street in front of the plaintiff's premises, and upon other streets in East Baltimore, which ordinance was certified to the Mayor as having passed both Branches of the City Council and was by him approved on July 11th, 1896.

The claim as made in the very able brief with which I have been favored by plaintiff's counsel, is, "FIRST: That the Central ordinance did not pass the First Branch of the City Council in conformity with law, because it was put upon its passage before it had been read twice upon two separate days, as required by the Ninth Joint Standing Rule, which Rule was in full force, unsuspended and binding upon the Branch at the time the ordinance was put upon its passage." "SECOND: That the Central ordinance has never legally passed either Branch of the City Council, because the question as to author-

izing it to extend its railway over almost all of the streets named in the ordinance had been indefinitely postponed in the Second Branch at the same session of the Council, and because under the Twentieth Joint Standing Rule the same subject could not be again considered at such session by amendment or otherwise." It will be seen, therefore, that the sole ground of the plaintiff's contention is that the ordinance is invalid and void, and must be so declared by the Court, because in its passage the rules of procedure of the City Council have been violated.

The contention of the plaintiff, so far as the violation of Rule IX is concerned, depends for its soundness upon whether a vote of "two-thirds of the members of the Branch" means two-thirds of all the members of the Branch, and not two-thirds of the members of the Branch present. It is conceded that the vote on the motion to suspend the rule in order to give the Central Railway ordinance a second reading on the same day on which it was read the first time was fourteen in the affirmative and six in the negation, and, therefore, as the First Branch consists of twenty-two members, if the rule means two-thirds of all the members, the motion was not carried, because fourteen is not two-thirds of twenty-two. But the defendants here insist that whether this be the true meaning of Rule IX or not, no valid objection can be taken in the Courts to this ordinance.

I. Because after the votes above mentioned the ordinance was read a second time on the same day, and thereupon was put on its passage, and received the vote of seventeen members, which number is more than two-thirds of all members of the Branch; that a motion to reconsider was made, and a motion to lay the motion to reconsider on the table, which latter motion prevailed by a vote of nineteen to one; an affirmative vote of more than three-fourths of all the members of the Branch, and,

II. Because even if this position be not well taken, the validity of the ordinance cannot be questioned in Court for a mere violation of the rules of procedure of the Council.

This second contention of the defendants goes to the root of the plaintiff's case, and, if sound, disentitles him to recover, and should manifestly be first considered. The plaintiff has been able to cite no case in which a Court has ever undertaken to declare an act of legislation void for violation by the body that enacted it on its own rules of procedure, these rules resting upon no authority superior to that of the body that enacted them, whether such legislation be an act of the Congress or of a State Legislature, or an ordinance of a municipal corporation; nor has the Court been able by diligence to discover any such case; all of the cases cited upon plaintiff's brief where an ordinance or an act of Legislature has been declared void are cases where some law, proceeding from a superior source, had been violated in its passage, as in the case of the act of legislation that it had been enacted in contravention of the Constitution, and in the case of the ordinance that it failed to comply with the charter, or with some valid statute.

Eldora vs. Burlingame, 62 Iowa 33; People vs. Barnes, 35 Ill. 121; State vs. Council of Newark, 30 N. J. Law 305; Atkins vs. Philips, 8 So. Rep. 429 (Fla.); Walnut vs. Wade, 103 U. S. 692; South Ottawa vs. Perkins, 94 U. S. 260; Post vs. Supervisors, 105 U. S. 667; Coleman vs. Dobbins, 8 Ind. 160; Wetmore vs. Story, 22 Bard. 414; Campbell vs. Cincinnati (supra); Bloom vs. Xenia, 32 O. St. 461; Morrison's case, 98th Mass. 219; State vs. Hudson, 5 Dutch 478; Delphi vs. Evans, 36 Ind. 90.

Nor does the Heiskell case, 65 Md. 125, upon which the plaintiff so much relies, in my judgment, establish the proposition "that unless an ordinance is passed in conformity with the rules of procedure of the Council it is not legally passed at all and is void." An ordinance was attacked in that case as invalid because it had not been passed by a quorum of the First Branch of the City Council, it not being necessary, as the brief of Messrs. Wallis and Baer states, "to argue that if a quorum was not present, all acts purporting to be acts of the Branch were void." A rule had been adopted by the First Branch declaring that two-thirds of the members of that Branch should constitute a quorum. The ordinance attacked had been passed at a meeting where a majority, although not two-thirds of the members was present.

Judge Stone delivering the opinion, says on page fourteen, "we may take it for granted that when they passed that rule the members of that Branch supposed they had the power to enact such a rule, and that they conceived that it was, until repealed, obligatory upon them, and the question then is squarely presented *"had the First Branch the legal right to determine what should constitute a quorum?"*

This was the real question determined in the case and the ordinance was declared *valid*, because it was held that a majority of the members elected constituted a quorum of the City Council by the common law, and that the Council had no power under the charter authority given to both Branches "to settle their rules of procedure" to determine what number should constitute a quorum. Having determined that the City Council had no power to pass any such rule, as a rule of procedure, it was not decided, and it was unnecessary to decide, what would be the effect of the City Council violating a rule of procedure that it had power to pass; and the learned counsel for the plaintiff has, by reason of an omission by the reporter of a part of the appellee's brief, been led into an error in supposing "that neither the distinguished counsel which tried that case, nor the Court which heard it, for a moment thought of arguing the question as to whether an ordinance could be valid if it were not passed in conformity with the rules of procedure of the Council"; on the contrary, Mr. Bernard Carter, in his brief, to be found in the Law Library, on page 13, says: "We desire to say also (though it is not necessary to determine the question) that according to authority of the highest character, even if it was in the power of the present City Council to determine by the adoption of a rule, that two-thirds should constitute a quorum, yet, inasmuch as it only required a *majority* vote to establish such number as a quorum, it is in the power of the same majority, whenever they see fit, to *rescind* the rule and establish a *different* number as a quorum, or by the mere rescission, to leave the quorum as by common law established—that is to say, consisting of a majority; *and may, without such repeal, pass a valid ordinance by a*

*majority.* (Citing Dillon on Corp., see 288 (Note 2); 12 East. 32; 5 Watts 152.)

"Upon this principle, the First Branch of the City Council, without repealing the Second Rule (even if it could be construed as a rule fixing a quorum) *had a right to ignore it and pass the Fire ordinance."* And Judge Stone, on page 149 of his opinion, uses this significant language with reference to Rules of Procedure: "These rules operate nowhere except in the legislative hall of the body that adopts them."

There being then no case produced in which a Court has undertaken to declare an ordinance of a municipal corporation void for failure to comply with its own rules of procedure, what authority have we for the position that the Court cannot inquire into such violation. In Commonwealth vs. Mayor of Lancaster, 5 Watts 155, Chief Justice Gibson uses this language, "Adopted by a corporation, these rules of legislation resemble rules of conduct presented by an individual for his own government; they are rules of internal action with which those who are to deal with its external results, have no concern."

In McDonald vs. State, 80 Wisc. 411, the validity of an act of the legislature, Ch. 488, Laws of 1887, was challenged on two grounds, "(1) That the two Houses of the Legislature in attempting to enact that chapter *violated their own rules of procedure in several particulars;* and, (2) that the yeas and nays were not called on the passage of the bill and entered on the journals of the respective houses"; and Judge Lyon, delivering the opinion of the Court, says, "The Courts will take judicial notice of the statute laws of the State, and to this end they will take like notice of the contents of the journals of the two Houses of the Legislature far enough to determine whether an act published as a law was actually passed by the respective Houses in accordance with *constitutional* requirements; further than this, the Courts will not go. Where it appears that an act was so passed no inquiry will be permitted to ascertain whether the two houses have, or have not, complied strictly with their own rules of procedure upon the bill, intermediate between its introduction and final pass-

age, the presumption is conclusive that they have done so; we think no Court has ever declared an act of legislature void for non-compliance with the rules of procedure made by itself, or the respective branches thereof, and which it or they may change or suspend at will; if there are any such adjudications, we decline to follow them."

In Kilgore vs. Magee, 85 Pa. St. 412, the following language is used by the Court: "But when a law has been passed and approved and certified, in due form, it is no part of the duty of the judiciary to go between the law as duly certified to inquire into the observance of forms in its passage. The presumption applies to the act of passing the law that applies generally to the proceedings of any body whose sole duty is to deal with the subject. The presumption in favor of regularity is essential to the peace and order of the State. If every law could be contested in the Courts on the ground of informality in its enactment, the floodgate of litigation would be opened so widely society would be deluged in the flow."

In Railway Co. vs. Gill, Ark. 105, the Court stating, "It was alleged that the Act of April 4th, 1887, entitled An Act to regulate the rates to be charged by railroads for the carriage of passengers was not passed by the several houses of the General Assembly in accordance with their joint rules," says, "The joint rules of the General Assembly were creatures of its own, to be maintained and enforced, rescinded, suspended or amended as it might deem proper. Their observance was a matter entirely subject to legislative control and discretion and not subject to be reviewed by the Courts."

In McGraw vs. Watson, 69 Iowa 348-350, the Court says, "one position of the plaintiff remains to be considered; it is shown that the City Council of Clinton adopted for its parliamentary governance Robert's Rules of Order. It is contended that according to one of the rules all unfinished business fell to the ground when the term of service of the outgoing aldermen expired. But if we should concede that the rule in question became applicable, the most that could be said is that the Council violated one of its own rules of procedure; but if the statute was complied with, as we hold it was, in the passage of the ordinance, we think it was valid." Not only do these cases, in the absence of any case declaring void an act or an ordinance because in its passage the body enacting it had violated its own rules of procedure, which it had power to make or change at will, seem to me sufficient to establish the rule that where it appears that an act was passed in accordance with constitutional requirements, and an ordinance was passed in accordance with the requirements of the Constitution and laws of the State, the Courts will not inquire whether the two houses or bodies have or have not complied strictly with their own rules in their procedure upon the ordinance, intermediate between its introduction and its final passage, but this rule in my judgment rests upon the soundest principles of public policy.

If every ordinance of the Mayor and City Council could be impeached upon an inquiry into the facts which took place at its passage, as to whether the rules of procedure of the Council itself, rules which it has the power to make or unmake at pleasure, had been violated, all confidence in such ordinances would be destroyed, and these ordinances "instead of receiving the sanction of the community would open the door to litigation and confusion." The rules of the Council are made only for its own goverance, they are subject to change at any time; the Council itself by a long course of conduct may have placed an interpretation upon the rules, its own creatures, different from that which their language would ordinarily bear, and if their violation by the Council is to be a subject of inquiry by the Courts, ordinances which every member of the Council may supposed to have been properly passed, and to which there was no opposition, would be liable to be set aside or upheld as the proof of the existence of the rules of the Council itself, or their true meaning as interpreted by the actions of the Council itself, was or was not furnished to the Court, and no man in the community would be safe in acting upon any ordinance, although it was duly certified to the Mayor as having passed and had been approved by him, until every step in its passage had been examined in the Journals of all the Branches, as well as all the prior actions of the Council in interpreting its

own rules. Such a suggestion cannot meet my approval. Entertaining these views it becomes unnecessary to determine the other questions discussed in argument, and, as it has been agreed that this case shall be treated as if upon final hearing, I will sign a decree dismissing the bill with costs.