Commonwealth ex rel. Smith et al., Appellants, *v.* Clark et al.

Argued May 16, 1938.   Before KEPHART, C. J., SCHAF-
FER, MAXEY, LINN, STERN and BARNES, JJ.

*Robert T. McCracken,* with him *Samuel Fessenden,*
for appellant.

*Adrian Bonnelly,* with him *David Berger,* for appel-
lee.

OPINION BY MR. JUSTICE LINN, June 17, 1938:

The question is whether the Governor had the right to
remove[1] Messrs. Weglein and Smith from membership
in The Delaware River Joint Commission, hereafter re-
ferred to as the Commission.   Respondents, in their an-

---

[1] "Dear Mr. Weglein: In accordance with the authority vested
in me by Article VI, Section 4, of the Constitution of Pennsyl-
vania, I hereby remove you as a member of The Delaware River
Joint Commission, effective today.   Sincerely yours, (sgd.) George
H. Earle."

swer, averred that the Governor's action was authorized by Article VI, section 4[2] of the Constitution: ". . . Appointed officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed." Unless the appellants were the Governor's appointees, that provision would not furnish justification for his action. They contend that they were legislative appointees and therefore not subject to the Governor's summary power. The field of review is therefore reduced to an inquiry into the meaning of the appointing provisions of the Act of June 12, 1931, P. L. 575, 36 PS section 3503 et seq., creating the Commission.

Section 1 of the Act contained a form of contract entitled "Agreement between the Commonwealth of Pennsylvania and the State of New Jersey creating the Delaware River Joint Commission as a body corporate and politic and defining its powers and duties." The Governor was specifically authorized to enter into an agreement in substantially that form with the State of New Jersey. Section 2 provided that "Upon its signature on behalf of the State of New Jersey[3] and by the Governor

---

[2] The entire section is in these words: "All officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. Appointed officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed. All officers elected by the people, except Governor, Lieutenant Governor, members of the General Assembly and judges of the courts of record learned in the law, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate."

[3] The New Jersey statute (Laws of 1931, c. 391, p. 1219) provided that the contract should be executed on behalf of that state by the New Jersey Interstate Bridge Commission, then existing under prior legislation.

on behalf of the Commonwealth of Pennsylvania, the aforesaid compact or agreement shall be and become binding and shall have the force and effect of a statute of the Commonwealth of Pennsylvania, and The Delaware River Joint Commission shall thereupon become vested with all the powers, rights and privileges, and be subject to the duties and obligations, contained in said compact as though the same were specifically authorized and imposed by statute, and the Commonwealth of Pennsylvania shall be bound by all the obligations assumed by it under said compact. . . ." (P. L. 587)

Section 3 authorized application to Congress for approval of the agreement; section 4 dealt with appropriations; section 5 provided: "This act shall become effective on July first, one thousand nine hundred and thirty-one; but the Governor shall not enter into any agreement hereunder until the State of New Jersey shall have passed a substantially similar act embodying the agreement between the two States herein set forth, and making a like appropriation." The New Jersey statute contained substantially the same provisions in its sections 2 to 5.

The agreement was executed July 1, 1931, as specified. On that date the bridge, which had been built and operated for some years, became the property of the Commission, the "body corporate and politic," brought into existence by the two statutes and the agreement of the two states.

Who were the members of the corporation? Article II is in these words: "The commission shall consist of sixteen commissioners, eight resident voters of the Commonwealth of Pennsylvania, and eight resident voters of the State of New Jersey, who shall serve without compensation.

"The first eight commissioners for the Commonwealth of Pennsylvania shall be the Governor of the Commonwealth, the Auditor General, the State Treasurer, the Mayor of the City of Philadelphia, and the four addi-

tional persons now serving as members of the Pennsylvania Commission, existing by virtue of Act [of July 9, 1919, P. L. 814] and acts amendatory thereof and supplementary thereto.

"The first eight commissioners for the State of New Jersey shall be the eight individuals now holding office as members of the New Jersey Interstate Bridge Commission, existing by virtue of Chapter Two hundred seventy-one of the Laws of said State of one thousand nine hundred and twenty-nine, approved May sixth, one thousand nine hundred twenty-nine, and acts amendatory thereof and supplementary thereto, which said eight individuals are hereby appointed by said State as such commissioners, who shall serve for their unexpired terms as members of the New Jersey Interstate Bridge Commission. Succeeding commissioners shall be elected by the Legislature to serve for terms of five years.

"For the Commonwealth of Pennsylvania, the Governor, the Auditor General, the State Treasurer, and the executive head of the City of Philadelphia, in office at the time, shall always be members of the commission, and, in addition thereto, there shall be four members appointed by the Governor, who shall be known as appointive members. Whenever a vacancy occurs in the appointive membership of the Commission, the Governor shall appoint a member to serve for a term of five years from the date of his appointment.

"For the State of New Jersey, whenever a vacancy in the office of commissioner shall occur, such vacancy shall be filled for the unexpired term by the Legislature. If the Legislature shall not be in session when the vacancy occurs, such vacancy shall be filled by the Governor, and such appointee shall hold office until the Legislature convenes.

"All commissioners shall continue to hold office after the expiration of the terms for which they are appointed or elected unless and until their respective successors are appointed and qualified, but no period during which

any commissioner shall hold over shall be deemed to be an extension of his term of office for the purpose of computing the date on which his successor's term expires."

The statute clearly designated, by description, eight resident voters of Pennsylvania, describing four of them by the reference to the names of their respective offices, and the other four, by reference to their membership in an existing body theretofore created. The New Jersey representatives were likewise designated by description —eight members of an existing body. Provision was next made, as to Pennsylvania, that the holders from time to time of four offices should "always be members of the commission, and, in addition thereto, there shall be four members appointed by the Governor, who shall be known as appointive members." Provision was made for filling vacancies in the appointive membership, authorizing appointment by the Governor for the "term of five years from the date of . . . appointment." For New Jersey the authority to fill vacancies was vested in the legislature, with power in the Governor to appoint temporarily, when the legislature was not in session.

If the words now in question, i. e., those quoted above, designating the first incumbents, are given their ordinary meaning, they sensibly express a legislative intention about which there is no doubt; in such circumstances, a court must give them such effect; there is then no room to apply rules of construction; the clear expression of a legislative intention excludes resort to such rules to support a conjectural meaning.

In the effort to support the order appealed from, counsel for the appellees finds it necessary, in a search for the intention he would attribute to the legislature, to go back to the earlier legislation pursuant to which Pennsylvania participated in building the bridge. He refers to the Act of July 9, 1919, P. L. 814, 36 PS section 3421 et seq., providing for a commission to act with a similar commission created by New Jersey in building the

bridge. The legislature had prescribed that the bridge building commission should consist of the Board of Commissioners of Public Grounds and Buildings of the Commonwealth of Pennsylvania,[4] the Mayor of The City of Philadelphia, and two other citizens "to be appointed by the Governor." By subsequent amendments[5] the Governor was authorized to appoint two additional members, and the Governor, Auditor General and State Treasurer were substituted for the Board of Commissioners of Public Grounds and Buildings.

The statute now before us contains a provision, Article VI, of the agreement, in these words: "The control, operation, tolls and other revenues of the aforesaid existing bridge across the Delaware River between the City of Philadelphia and the City of Camden, and of all real and personal property appurtenant thereto or used in connection therewith, shall vest in the commission on the first day of July, one thousand nine hundred and thirty-one, and the terms of the members of the aforesaid Pennsylvania Commission [i. e., the bridge building commission] and the aforesaid New Jersey Interstate Bridge Commission shall cease and terminate on that date."

On July 1, 1931, the bridge vested in the new corporation; apparently there was nothing more to be done by the members of the building commission created by the Act of 1919 and amendments, and, as there was nothing more to be done by it, the terms of the members of that body were ended and it went out of existence. The power of the legislature to destroy that commission is not now challenged. The learned court below thought that, as the earlier legislation had authorized the Governor to appoint members to the former commission, the legislature must have intended in the new Act to say that he should be regarded as having now appointed the

---

[4] Existing pursuant to Act of June 16, 1919, P. L. 482.

[5] Acts of 1921, P. L. 287; 1925, P. L. 538.

four men whom he or his predecessor in office had previously appointed to the abolished commission.

The learned judge also expressed an alternative view to the effect that the Act did not create the Commission, but merely authorized its creation by the Governor's execution of the contract, which execution operated as an appointment of the members by the Governor. Two additional positions are taken by appellees' counsel, (1) "It would be unconstitutional for the legislature to appoint the members of a non-legislative body such as the" Commission; (2) the legislature by resolution approved the removal.

1. Considering the first position, we again quote the legislative words designating who shall constitute the Pennsylvania members of the corporation at its inception. "The first eight commissioners for the Commonwealth of Pennsylvania shall be the Governor of the Commonwealth, the Auditor General, the State Treasurer, the Mayor of the City of Philadelphia, and the four additional persons now serving as members of the Pennsylvania Commission, existing by virtue of" previous legislation already referred to. We cannot see the slightest difficulty in understanding that provision to be a legislative designation or appointment by accurate description of the eight members by reference to offices then held by them. The appointment was complete; the Governor could add nothing to it; he could take nothing from it; the appointees were clearly described. He could have vetoed the bill; instead, he approved it, but his approval was not the selection of members of the commission, because that had already been done by the legislature.

2. We can see no basis for the contention that, by signing the contract, the Governor made the appointments. Once both states passed the law, the Governor's duty to sign the contract became ministerial so far as it had any relation to the first members of the proposed

corporation; the authority to execute the contract in a form agreed to had been conferred by the statute which the Governor had approved. On behalf of New Jersey the contract was executed (we assume) by the New Jersey Interstate Bridge Commission; the states were competent to agree upon any agency for execution that was mutually agreeable. Signing the contract was not appointing members within the words of Article VI, section 4, of the Constitution.

3. The third ground relied on by appellees is based on the doctrine of the separation of powers. Appellees say, "Under our system of the separation of powers it seems very doubtful whether it is within the province of the Legislature to create a body exercising no legislative functions whatsoever, but performing only executive duties, and then to name the individual members thereof."

It may first be noted that appellees' statement is not accurate in describing the Commission as "a body exercising no legislative functions whatsoever, but performing only executive duties." The Commission has duties that are legislative in character. The portion of the bridge in Pennsylvania and the approaches to it in the City of Philadelphia are part of the highway system of Pennsylvania: see *Westmoreland Chemical Co. v. Pub. Serv. Com.*, 294 Pa. 451, 456 et seq., 144 A. 407; *Tranter v. Allegheny County*, 316 Pa. 65, 74, 173 A. 289. Moreover, an examination of Article IV contained in section 1 of the Act of 1931, P. L. 579, shows that delegable duties in the maintenance and improvement of highways have been delegated to the Commission. It is therefore unnecessary to refer to cases on this subject from other jurisdictions, cited in the briefs. There would also seem to be an obvious difficulty in accepting appellees' view on this point: the same statute expressly provides that the legislature of New Jersey shall appoint the members (after the first eight appointed by description) from time to time. We must assume that the same doc-

trine of the separation of powers that appellees would invoke is likewise respected in New Jersey.[6]

4. Appellees' fourth point is also without merit. On January 11, 1937, after the Governor's removal notice of December 10, 1936, both branches of the legislature passed a concurrent resolution reciting in its preamble that appellants had questioned the Governor's authority; it also provided: "WHEREAS, The General Assembly is of the opinion that the removed commissioners are not appointees of the General Assembly, and were properly removed by the Governor of the Commonwealth; now, therefore, be it

*Resolved* (if the House of Representatives concur [we assume it did]), that it is the sense of the General Assembly that the said Thomas B. Smith and Richard Weglein were lawfully removed as members of The Delaware River Joint Commission, and that they no longer hold office as such."

It is the duty of the courts to determine what the Act of 1931 means; the legislature has no power by resolution to determine how that statute shall be interpreted in its application to a past transaction or that appellants "were lawfully removed as members of the [Commission] and that they no longer hold office as such": *Reiser v. William Tell Saving Fund Assn.*, 39 Pa. 137. The duty of determining the legality of the alleged removal was and is in the Courts; at this point the doctrine of the separation of powers operates against appellees.

5. We have sufficiently stated the reasons for our decision. It should however be added that we are construing a contract made by the Commonwealth of Pennsylvania and the State of New Jersey. It may very well have been considered desirable, in relinquishing the con-

---

[6] See *State v. City of Wildwood*, 83 N. J. L. 188, 84 A. 274; *State v. Board of Chosen Freeholders of Monmouth Co.*, 68 N. J. L. 480, 53 A. 208.

trol theretofore exercised severally by the two states and in turning the property over to the two-state corporation, that both states desired that the corporation should have the benefit of the experience acquired by the members of the superseded state commissions and for that reason provided that they should be designated as the legislative appointees to serve until the end of the unexpired terms for which they had been appointed to the superseded commissions. We regard the meaning of the words of the appointment, quoted above, as too plain for argument but refer to the subject now on the principle that even if there was ambiguity a state should be reluctant to interpret ambiguous language in its favor. Scrupulous care should be exercised by a sovereign state to comply with the terms of its contract.

Order reversed, record remitted to the end that an appropriate order may be issued, costs to be paid by the appellees.

Mr. Justice BARNES dissents.