## Souder, Admrx., Appellant, *v.* Philadelphia Police Pension Fund Assn.

Argued January 13, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*James E. Gallagher, Jr.,* with him *Daniel Mungall, Jr., Lewis M. Stevens,* of *Stradley, Ronon & Stevens,* for appellant.

*Samuel Feldman,* Assistant City Solicitor, with him *Francis F. Burch,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE DREW, March 23, 1942:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County discharging a rule for judgment for want of a sufficient affidavit of defense.

The suit is in assumpsit and by the Administratrix of the estate of her husband, Alfred I. Souder, against the City of Philadelphia Police Pension Fund Association, to recover pension monies alleged to be due Souder at the time of his death, February 20, 1939.

The pleadings, plaintiff's statement of claim and defendant's amended affidavit of defense, show that Souder was a member of the police force of Philadelphia from 1900 to 1926, and during that time a member in good standing of the Pension Fund Association. That in 1926 he resigned from the police force and accepted employment from the Delaware River Joint Commission as Superintendent of Police on the bridge between Philadelphia and Camden. At that time, he was enrolled as a pensioner of appellee Association, and thereafter received a regular pension of $107.00 per month until March 1, 1936, a period of ten years, when the Associa-

tion notified him that his pension had been suspended under this provision of its by-laws—"Article XII. Section 10. Should a member of this Association who has been pensioned enter the service of either the City or the County of Philadelphia, or should he enter the service of the State of Pennsylvania in a position where the service to be rendered shall be within the limits of the County of Philadelphia, or should he become a member of the State Constabulary, then and in any such case the pension of such member shall be suspended during the period he shall continue in any such service; . . ."

Although Souder lived for three full years after his pension had been discontinued, he took no legal action to recover it, and it was only after he died that a claim was made, and then by his Administratrix, who now claims the monthly pension for a period from March 1, 1936, to February 20, 1939, with interest.

The learned court below held that Souder's employment by the Delaware River Joint Commission fell within the provisions of the by-law mentioned, and discharged appellant's rule for judgment for want of a sufficient affidavit of defense, and this appeal followed. The court held that when Souder accepted employment as Superintendent of Police from the Delaware River Joint Commission, he entered "the service of the State of Pennsylvania . . . and . . . within the limits of the County of Philadelphia." With this conclusion we cannot agree.

It might be well to first determine the meaning of the phrase "enter the service" as used in the by-law. A careful reading of the by-laws convinces us that their framers obviously meant "enter the employment". It is apparent from the absence in the by-laws of the words "employee", "employment", and "in the employ of" that the framers were avoiding their use, deeming it more advisable to express the relationship as one of "service". This practice is readily understandable, since to the minds of many those words may suggest a more ordinary, less specialized type of activity than that in which govern-

ment workers are engaged. Moreover, even if there were doubt in our minds as to what was in contemplation, we would adopt this construction—it being more favorable to plaintiff. It is a well-settled principle of law that ". . . construction must be put on the laws of the order, taken as a whole, which is most favorable to the members, and which most protects their beneficiaries. So when the rights of members or their beneficiaries are involved, by-laws declaring a forfeiture are to be construed strictly . . . so as to prevent . . . forfeiture . . . and in order to do complete justice": 10 C. J. S., Beneficial Association, Section 28.

We now turn to the vital question: Did Souder enter the service or employment of the Commonwealth of Pennsylvania when he accepted the position of Superintendent of Police on the Delaware River Bridge? This can only be answered after an examination of the history and nature of the Delaware River Joint Commission, which hired him and paid his salary. The Act of July 9, 1919, P. L. 814, provided, inter alia, for the construction of a bridge in conjunction with the State of New Jersey, and for the appropriation of the sum of $750,000 as this State's share of the expenses incident thereto. This statute also created the "Pennsylvania commission", to be composed of the Board of Commissioners of Public Grounds and Buildings of the Commonwealth of Pennsylvania, the Mayor of Philadelphia and two other Pennsylvania citizens to be appointed by the Governor. This Commission, with a similar one to be established by the State of New Jersey, was authorized to proceed with the erection of the bridge, and in so doing it was provided that the Commissions acting jointly could not bind this Commonwealth beyond the monies so appropriated, and that these funds were to be disbursed by the State Treasurer on warrants to be drawn on the State Auditor General and payable on vouchers submitted to him. This Act of 1919 was amended and supplemented by the Acts of April 26, 1921,

P. L. 287; July 13, 1923, P. L. 1093; May 6, 1925, P. L. 538; May 14, 1925, P. L. 737; February 18, 1926, P. L. 10, and April 7, 1927, P. L. 145, whereby, inter alia, the "Pennsylvania commission" was increased to include in its membership the Governor, the Auditor General, the State Treasurer and two additional citizens of this Commonwealth; and further powers were conferred and duties imposed upon this Commission acting jointly with the Commission of the State of New Jersey, among which was the power to appoint such number of policemen as may be found necessary to keep the bridge safe and to preserve order thereon.

The Act of 1919, as thus amended and supplemented, shows clearly the intention of the legislature, by the establishment of the "Pennsylvania commission", to create a dependent and subordinate administrative body, which partook of virtually all the elements of an executive department of the Commonwealth. However, the situation thus created was entirely changed by the Act of June 12, 1931, P. L. 575. Being of the opinion, among other things, that the interests of this Commonwealth and those of the State of New Jersey would be best served by consolidating the two original Commissions and that it was highly desirable that there be a single agency representing both States, the legislature enacted this latter statute. Thereby the Governor was authorized to enter into a compact or agreement with the State of New Jersey for the creation of the "Delaware River Joint Commission", which was the employer of Souder, as a body corporate and politic. The agreement, as directed by the Act, also provided that this new Commission was to have power to operate and maintain the bridge, to have perpetual succession, to sue and be sued, to appoint such officers and employees as required, to fix and determine their qualifications, duties and compensation, to enter into contracts, to borrow money upon its bonds or other obligations, to make and enforce rules and regulations, to establish, levy and collect tolls, and generally to exer-

cise over the property which it controlled any and all powers which might be exercised by a natural person or a private corporation with similar property and affairs. However, the agreement was to prohibit the Commission from pledging the credit of either State or from creating any debt against them.

That the legislature had power to create such a corporation cannot be questioned. "The highways, roads, streets and bridges of the Commonwealth, apart from private ownership such as turnpike companies, are the property of the State; it may set up any agency to administer, control and maintain them": *Westmoreland Chemical & C. Co. v. P. S. C.,* 294 Pa. 451, 456. By directing the Governor to enter into this compact the legislature clearly indicated its intention to abandon the previous dependent administrative agency known as the "Pennsylvania commission", and to establish in its stead the "Delaware River Joint Commission" as a special public corporation. Upon the execution of the agreement on July 1, 1931, the Commission became a distinct entity, separate and apart from either State. "On that date the bridge, which had been built and operated for some years, became the property of the Commission, the 'body corporate and politic,' brought into existence by the two statutes [that of this State and that of the State of New Jersey] and the agreement of the two states": *Com. ex rel. Smith v. Clark,* 331 Pa. 405, 408. On the date of the agreement, title to the bridge vested in the new corporation. Its obligations were payable solely from its own revenues raised by it through the sale of its bonds and the collection of tolls. Its employees were not those of this Commonwealth or of the State of New Jersey, but of this public corporation, which hired them and paid their salaries.

While the Delaware River Joint Commission acts as the agent of the Commonwealth *(Delaware River Joint Commission Case,* 342 Pa. 119, 122), yet it is indeed similar in structure to the various Municipal Authorities

authorized by statute to be created throughout the State. They are public corporations, being corporate agencies engaged in the administration of civil government: *Lighton v. Abington Twp.*, 336 Pa. 345, 354; *Com. ex rel. McCreary v. Major*, 343 Pa. 355, 358. Certainly, it could not logically be contended that if such an Authority were to purchase a water works, or similar project, as permitted by statute, that the employees engaged in its operation would be those of the Commonwealth. While a city, county or other municipal corporation is also the agent of the Commonwealth, invested with certain subordinate governmental functions for reasons of convenience and public policy *(Commonwealth v. Moir*, 199 Pa. 534, 541), it cannot be reasonably argued that those employed by such municipalities are employees of the State.

We find no merit in the appellee's contention that the legislature recognized the fact that the employees of the Commission were in fact employees of the Commonwealth when it amended the Act of June 27, 1923, P. L. 858, relative to the State Employees' Retirement System, by the Act of May 18, 1937, P. L. 683. The Act of 1923, creating the Retirement System, provided that a " 'State employe' shall mean any person holding a State office . . . or employed . . . by the State Government of the Commonwealth of Pennsylvania . . .", and the amending statute of 1937 added the following: ". . . and shall include . . . all officers and employes of the Delaware River Joint Commission . . ." The inclusion of employees of this Commission by the Act of 1937 is convincing evidence that those employees could not be construed to fall within the definition of "state employe" as contained in the Act of 1923. See *Rolland v. Commonwealth*, 82 Pa. 306, 324. Furthermore, it is significant that, even in the inclusion, Commission employees were treated materially different from State employees, since their becoming members of the System is contingent upon contribution to the Retirement Fund by the Commission.

Clearly, the mere fact that such employees were permitted, under special circumstances, to become members of the System in no way indicates, or tends to indicate, that they were to be considered as employees of the State for any other purpose or purposes.

Our answer is that Souder was not in the service of the Commonwealth while in the employ of the Delaware River Joint Commission. Therefore, we need not discuss the other question as to whether the services rendered by him were "within the limits of the County of Philadelphia".

The order of the learned court below is reversed, and judgment is here entered for plaintiff as Administratrix for the amount of the claim, with interest, from the respective dates on which monthly pension payments became due.

Justices LINN and PATTERSON dissent.