Delaware River Joint Toll Bridge Commission *v.*
Carver, Appellant.

Argued January 11, 1960. Before Jones, C. J., Bell,
Musmanno, Jones, Bok and Eagen, JJ.

*Frank B. Murdoch,* with him *John Justus Bodley,* and *Schnader, Harrison, Segal & Lewis,* for appellant.

*Robert W. Valimont,* with him *James C. Bowen,* and *Bowen & Valimont,* for appellee.

OPINION BY MR. JUSTICE EAGEN, May 4, 1960:

Appellant was appointed to membership on the appellee Commission on June 4, 1943, by the then Pennsylvania Governor, Edward Martin. He served as a Commissioner from that date until June, 1955, without receiving any compensation for services rendered in that position. On December 12, 1947, the members of the Commission, ten in number, elected him to serve as a member of the Executive Committee, which was part of the active operating administration of the Commission. The Executive Committee, six in number, consisted entirely of members of the Commission. Beginning in February, 1948, he was compensated, as a member of said committee, through and including June, 1955, for "extra services" allegedly performed by him, as follows: $1,100 for 1948; $1,800 for 1949 and 1950, each; $3,600 for 1951 in equal amounts from the "Revenue Fund" and the "Construction Fund"; $4,500 for 1952 paid in amounts of $1,800 and $2,700, respectively, from the same two funds; the same amount in the years 1953 and 1954 paid entirely from the "Revenue Fund"; and, $2,250 from the same source for the months of January through June, 1955.

The instant suit, in assumpsit, was instituted on April 12, 1957, by the appellee Commission in the Court of Common Pleas of Bucks County for the recovery of $24,050, representing the total sum paid as

above, alleging that this money was illegally paid to appellant by the Commission and praying for judgment against him in this amount with interest and costs. Judgment on the pleadings was entered by the court below on September 4, 1959, in favor of the Commission for the amount sought with interest from April 12, 1957. Carver appealed.

Payment to him of these moneys is conceded by appellant, who avers said remuneration to have been fair and reasonable, duly authorized and rightfully paid, claiming to have been paid not by appellee, but by the trustee for the bondholders, The First-Mechanics National Bank of Trenton.

Appellee asserts Mr. Carver to have been a "public officer" and, as such, not entitled to compensation unless authorized by statute, ordinance or specific agreement: *Rothrock v. Easton School District*, 133 Pa. 487, 19 Atl. 483 (1890) ; *Dorsett v. Tioga County*, 228 Pa. 628, 77 Atl. 1016 (1910) ; *Benson v. Bradford County*, 125 Pa. Superior Ct. 209, 189 Atl. 577, affirmed in 326 Pa. 454, 192 Atl. 650 (1937) ; *McKean County v. Young*, 11 Pa. Superior Ct. 481 (1899) ; *Commonwealth ex rel. v. Gingrich*, 21 Pa. Superior Ct. 286 (1902) ; *Fry v. Berks County*, 38 Pa. Superior Ct. 449 (1909). Appellant likens appellee to a multi-state private corporation and denies that it was or is a public corporation and that he was a public officer within the meaning of the rule supported by the above-cited cases.

The appellee is a public corporation: *Delaware River Joint Toll Bridge Commission v. Miller and Carver*, 147 F. Supp. 270 (E.D. Pa. 1956) ; *Souder v. Philadelphia Police Pension Fund Assn.*, 344 Pa. 286, 25 A. 2d 191 (1942) ; *Henderson v. Delaware River Joint Toll Bridge Commission et al.*, 362 Pa. 475, 66 A. 2d 843 (1949). In the *Henderson* case, Mr. Justice JONES (now Chief Justice) wrote as follows, at 478: "By the terms of the compact, the Commission was declared

to be 'the public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey for the following public purposes, and shall be deemed to be exercising an essential governmental function in effectuating such purpose,' to wit, the construction, operation and maintenance of bridge communications over the Delaware River, north of the present stone arch bridge of the Pennsylvania Railroad at Trenton, . . . ." A study of the compact in question and the enabling Act of June 25, 1931, P. L. 1352, as amended by the Act of May 18, 1933, P. L. 827, 36 PS §3401, setting forth the authorized powers and functions of the interstate Commission, reveal that its duties are both executive and legislative in character, a conclusion reached by this Court with respect to the earlier Delaware River Joint Commission in *Commonwealth ex rel. Smith v. Clark,* 331 Pa. 405, 413, 200 Atl. 41 (1938).

Appellant's citation of authority for the proposition that this Commission is a distinct entity separate and apart from Pennsylvania and New Jersey does not derogate from the public *nature* of appellee. It is by virtue of the legislation of Pennsylvania enabling its creation that this Commission is designated a body *corporate and politic.* No support for appellant's position can be gleaned from the language of the Dauphin County court in *Carver v. Delaware River Joint Toll Bridge Commission,* 70 Dauphin 114 (1957), wherein the court, dismissing appellant's petition for a declaratory judgment with respect to the legality of the same payments made to him that are herein in question, said at 116: ". . . the defendant is a separate corporate entity and not the alter ego of the Commonwealth. While it is the 'instrumentality' and 'agent' of the Commonwealth, it is not the Commonwealth." Accepting this characterization of appellee as true, we can nevertheless not escape the inevitable conclusion

that appellee, though separate and not the Commonwealth, is indeed public in nature and purpose.

Appellant contends that the Commission was not able, on its own, to award salaries to its members, that it was "harnessed" by a strict "Trust Indenture" by the terms of which payments to its members could be made only upon recommendations by its consulting engineers, and that payments were in fact made, not by the Commission but, by the Trustee. There is no merit in this contention. The Trust Indenture, after providing that payments from the Revenue Fund could be made only after a requisition and certificate, properly signed by certain Commissioners, were first filed with the Trustee, specifically states: "Upon receipt of each requisition and accompanying certificate the Trustee *shall* pay each such obligation. . . ." Clearly, no discretion lay with the Trustee, following the transmittal of the requisition and certificate, to allow or disallow payments thereby called for. Indeed, an exhibit on the record, being a photostatic copy of a duplicate of one such requisition, addressed to the Trustee and signed *on behalf of the Commission* by "Alex R. Miller and Doris S. Jones" is notice that, "You are hereby *directed* to pay For Payroll Purposes the sum of. . . ." Mr. Miller, who signed in the capacity of chairman, was himself on the payroll of the Commission as a member of the Executive Committee.

The duties devolving on appellant as a member of this Commission affirmatively establish his status, while a member thereof, as that of a "public officer." These duties were extraordinary in nature and involved the exercise of powers which otherwise must have remained governmental in scope. The Commission by law was obligated to forward written reports annually to the Governor of Pennsylvania. Mr. Carver's commission came to him from the office of the Governor. It was solely through legislative authority on the part of

the two states, which were parties to the compact, that the Commission came into existence. The action of the Commission in creating salaries for its own members (salaries not otherwise authorized), clearly ultra vires, brings this case squarely within the rule of this Court with respect thereto announced in the early case of *Commonwealth v. Mayor of Lancaster,* 5 Watts 152 (1836), and *Lawson v. Allegheny County,* 326 Pa. 242, 191 Atl. 600 (1937). Obvious dictates of public policy militate against the propriety of members of a commission, created as a body corporate and politic, in attempting to accomplish by indirection the exercise of a power given them neither directly nor by necessary implication. Especially must this be so when the ends sought to be attained are directed toward the personal aggrandizement of the body as individuals.

Appellant's reliance on paragraph (p), 36 PS §3401, Art. II, which granted to the Commission "all other powers," not inconsistent with the Constitution of either state or of the United States, reasonably necessary or incidental to the effectuation of its authorized purposes, was properly discouraged in *Commonwealth v. Miller et al.,* 7 Bucks Co. L. Rp., 170, 181 (1957), whereat the following appears: "Defendants would have us hold that the effect of this phraseology permits this public corporate instrumentality to conduct its affairs as if it were a private corporation, and thus pay whatever salaries it deems necessary to the commissioners. It is clear to us that a reading of the compact as a whole negatives any such construction. Any theory under which the commissioners by virtue of their appointment might use the funds derived from the public for their own personal benefit is entirely repugnant to the purposes of the enabling act and the compact entered into by virtue thereof." Similarly well reasoned is the opinion of the court below as expressed in *Delaware River Joint Toll Bridge Commission v.*

*Miller,* 9 Bucks Co. L. Rep., 104 (1959), referred to in the opinion of Judge BIESTER, wherein he said: "To adopt the theory advanced by the defendant, the absurd result would be reached that this public corporate instrumentality, exercising important governmental functions, might be operated for the aggrandizement and personal benefit of its individual members . . . the commission has the right to function as a private corporation *within its framework as a public corporation.* It was not intended that by the insertion of the clause in question the whole public structure would be obliterated. Actually the phrase used points up the public nature of the corporation, for if it were a private corporation the language used in par. (p) would be inapposite and meaningless."

Appellant refers us to Article X(i) of the enabling legislation (Act of June 13, 1947, P. L. 592, §1), which provides that no member of the Commission shall be subject to any personal liability or accountability by reason of any act or omission of the Commission. While at first blush this provision would seem to set up a roadblock to these proceedings, it is clear that the Legislature simply meant to confer upon the Commissioners the same protection generally enjoyed by officers of a private corporation. But, no less certainly, individual commissioners remain individually responsible for the ultra vires acts of the Commission. It cannot seriously be urged that the provision in question completely protects the commissioners from suits brought to remedy wrongs perpetrated by the Commission without any legal authority whatever.

We are in complete accord with the following observation of Judge BIESTER in *Commonwealth v. Miller et al.,* supra, p. 182: "Reference is made in the briefs to the fact that such salaries were paid to the defendants as members of an executive committee. . . . We will say, however that whatever they designated themselves

to be would not change their status as public officers and we do not see how we could countenance a device or subterfuge, which would permit public officers to call themselves by another name, that is members of the executive committee of a public corporate body, and thus become entitled to the payment of salaries not otherwise authorized."

Judgment affirmed.

Mr. Justice Bell and Mr. Justice Benjamin R. Jones dissent.

Mr. Justice Cohen took no part in the consideration or decision of this case.