Anderson Appeal.

Argued November 15, 1961.   Before BELL, C. J., MUSMANNO, JONES, COHEN and EAGEN, JJ.

*Augustus R. Sigismondi*, with him *Richard D. Solo*, for appellant.

*Morris Duane*, with him *Henry T. Reath, John B. Felton, Francis W. Sullivan*, and *Duane, Morris & Heckscher*, for appellee.

*Frank Edward Roda*, Special Assistant Attorney General, with him *David Stahl*, Attorney General, for Commonwealth, amicus curiae.

OPINION BY MR. JUSTICE COHEN, June 28, 1962:

By this appeal, our Court is called upon to decide the important issue of whether or not appellee, Delaware River Port Authority (Authority), may claim the Commonwealth's immunity from liability for consequential damages resulting from its activities and thereby defeat appellant property owner's petition for the appointment of a board of view to assess such damages.

According to the stipulation of facts by the parties, appellant is the owner of a dwelling located in South Philadelphia. By various resolutions adopted in 1954, Authority condemned certain property including land adjoining that owned by appellant in conjunction with the construction of the Walt Whitman Bridge connecting Philadelphia and New Jersey. None of appellant's land, however, was taken by condemnation nor was any of it occupied or used by Authority. Since it is agreed that there has not been any physical taking of land belonging to appellant, any injury or damage to her property is solely consequential in nature.

The bridge which has been erected at right angles to the street rises approximately twenty feet above the roadway and runs the entire length of appellant's property, only a distance of about two feet from her property line. It is clear that as a result of the construction, appellant has sustained a loss of light, air and view.

Appellant petitioned the Court of Common Pleas No. 3 of Philadelphia County for the appointment of a board of view to assess damages. Notwithstanding Authority's answer contesting appellant's right to have viewers appointed, the court entered a decree appointing a board of view to determine the damage allegedly sustained by appellant. Authority thereupon filed a petition for reargument which was granted. Subsequently, the Commonwealth was permitted to participate amicus curiae in the argument.

Following reargument, the court below reversed itself and entered a decree dismissing appellant's petition for appointment of viewers and quashed the proceedings on the ground that the title of the Act was defective and did not contemplate compensatory damages. From this decree appellant appeals to our Court.

Appellee Authority was formed by a compact between the Commonwealth of Pennsylvania and the State of New Jersey which was consented to by the Congress of the United States. The compact, authorized by Act of the Pennsylvania Legislature, August 10, 1951, P. L. 1206 (amending Act of June 12, 1931, P. L. 575, as amended by Act of July 18, 1951, P. L. 1010), 36 PS §3503, had as its purpose the creation of a joint authority to construct, develop and maintain facilities in the ports of Philadelphia and Camden.

It has long been the established rule that absent an act of the legislature expressly imposing liability, the Commonwealth is not liable for consequential damages to land where there is no actual physical taking. *Ewalt v. Pennsylvania Turnpike Commission*, 382 Pa. 529, 115 A. 2d 729 (1955) ; *Brewer v. Commonwealth*, 345 Pa. 144, 27 A. 2d 53 (1942) ; *Heil v. Allegheny*, 330 Pa. 449, 199 Atl. 341 (1938) ; and *Moyer v. Commonwealth*, 183 Pa. Superior Ct. 333, 132 A. 2d 902 (1957).

Appellant contends, however, that Authority is a "municipal [or] other" corporation required to "make just compensation for property taken, injured or destroyed," in accordance with Article XVI, §8, Pennsylvania Constitution of 1874, and is accountable, therefore, for consequential damages resulting from its activities.

Appellant relies upon *Souder v. Philadelphia Police Pension Fund*, 344 Pa. 286, 25 A. 2d 191 (1942) wherein our Court held that entering the service or employ of the Delaware River Joint Commission was not en-

tering the service or employ of the Commonwealth. In arriving at its conclusion our Court stated: "Upon the execution of the agreement on July 1, 1931, the [Delaware River Joint] Commission became a distinct entity, separate and apart from either State. . . . While the Delaware River Joint Commission acts as the agent of the Commonwealth [citing case], yet it is indeed similar in structure to the various Municipal Authorities authorized by statute to be created throughout the State." (344 Pa. 291, 292).

We disapprove of the statements made in the *Souder* case and consider them an inaccurate analysis of the true position of the Delaware River Joint Commission and its successor, appellee-Authority.

A study of the enabling and governing statutes reveals that Authority is not a mere public corporation, but, rather, was intended to be and has always been an agency of the Commonwealth of Pennsylvania carrying out an executive function and hence immune from the payment of consequential damages.

The Act of July 9, 1919, P. L. 814 (36 PS §§3421 to 3431), created the "Pennsylvania Commission" empowered to act with a similar commission created in the State of New Jersey as a joint commission to construct a bridge over the Delaware River connecting the cities of Philadelphia and Camden. Section 5 of this act granted the Commission the power to purchase or condemn in the name of the Commonwealth such land as was necessary for the building of the bridge and the approaches thereto.

Section 6 of the act provided: "In all cases where the price or damages to the owner or owners . . . can not be agreed upon, and proceedings to assess damages shall become necessary, the said Pennsylvania commission, acting through the Attorney General, shall petition the court of common pleas of the county of Philadelphia for the appointment of viewers, . . . and if the

said Pennsylvania commission shall delay petitioning as aforesaid for the period of sixty days after notice is given of the taking possession of said ground, then said jury shall be appointed upon the petition of any person whose property shall be taken . . . ."

The successor to the "Pennsylvania Commission" was the Delaware River Joint Commission created under the Act of June 12, 1931, P. L. 575. The Act of 1931 provided in Article I: "There is hereby created a body corporate and politic, to be known as The Delaware River Joint Commission . . . which shall constitute the public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey for the following public purposes, and which shall be deemed to be exercising an essential governmental function in effectuating such purposes . . . ."

Article V. of the 1931 Act preserves the powers of eminent domain as they existed under the Act of 1919. Paragraph 2 of Article V. provides as follows: "If the commission is unable to agree with the owner or owners thereof upon terms for the acquisition of any such real property in the Commonwealth of Pennsylvania for any reason whatsoever, then the commission may acquire such real property in the manner provided by Act Number Three hundred and thirty-eight of the Commonwealth of Pennsylvania, approved July ninth, one thousand nine hundred and nineteen, and acts amendatory thereof and supplementary thereto, for the acquisition of real property by the aforesaid Pennsylvania Commission."

The present Delaware River Port Authority was created by the Act of August 10, 1951, P. L. 1206 (36 PS §3503). The 1951 statute, in material measure, adopted the provisions of the 1931 statute: ". . . Whereas, It is highly desirable that there be a single agency of both States empowered to further the aforesaid interests of both States;

"Now Therefore, The Commonwealth of Pennsylvania and the State of New Jersey do hereby solemnly covenant and agree each with the other, as follows:

Article I.

"The body corporate and politic, heretofore created and known as The Delaware River Joint Commission, hereby is continued under the name of The Delaware River Port Authority, . . . which shall constitute *the public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey for the following public purposes, and which shall be deemed to be exercising an essential governmental function* in effectuating such purposes. . . ." (Emphasis supplied).

A reading of the provisions of the 1931 and 1951 acts leaves no doubt that the legislature intended to make Authority a vital arm of the Commonwealth of Pennsylvania carrying on an essential governmental function. Moreover, as an analysis of the provisions of the compact reveals, Authority in performing its duties is strictly controlled by and responsible to the legislatures and the governors of the two states.

This Court has considered the status of Authority and its predecessors and of similarly constituted agencies in a long line of cases. In *Westmoreland Chemical and Color Company v. Public Service Commission,* 294 Pa. 451, 456, 144 Atl. 407 (1928), we stated that "[t]he highways, roads, streets and bridges of the Commonwealth, apart from private ownership such as turnpike companies, are the property of the State; it may set up any agency to administer, control and maintain them."

In both *McGarrity v. Commonwealth,* 311 Pa. 436, 166 Atl. 895 (1933), and *Philadelphia Electric Company v. Commonwealth,* 311 Pa. 542, 166 Atl. 892 (1933) we held, in construing the Act of 1919, July 9, P. L. 814 (the predecessor of the legislation authorizing the Delaware River Joint Commission in 1931)

that the Pennsylvania Commission was not liable in trespass for consequential damages resulting from a change of grade in the roadway, because notice of the imposition of such liability was not contained in the title of the act. More recently, in *Delaware River Joint Commission Case*, 342 Pa. 119, 19 A. 2d 278 (1941), we held that the Delaware River Joint Commission acts within this Commonwealth as the agent of the Commonwealth and the portions of the Delaware River (now Benjamin Franklin) Bridge and the approachments thereto located in the City of Philadelphia are part of the highway system of Pennsylvania.

Appellant attempts to distinguish the above cases on the ground that the statutes involved have been superseded by subsequent legislation. While this is true, the purpose underlying the two acts is still present in the Act of 1951 (36 PS §3503) which created a "public corporate instrumentality . . . which shall be deemed to be exercising an essential governmental function" as an "agency" of the Commonwealth. To this extent, the acts and the cases thereunder are relevant at the present time.

In a case arising under the present Act of 1951, *Delaware River Port Authority v. Pennsylvania Public Utility Commission*, 180 Pa. Superior Ct. 315, 119 A. 2d 855 (1956) the Superior Court stated: "In exercising the powers conferred upon it by the Commonwealth, the Authority acts as the agent of the Commonwealth . . . And since the Authority is the agency selected by the Commonwealth to construct the Pennsylvania approaches to the bridge including the crossing projects here involved, *the Authority stands in the place of the Commonwealth . . . ."* (Emphasis supplied). This Court refused a petition for allocatur in this case. 180 Pa. Superior Ct. xxix. See our recent opinion in a companion case, *Delaware River Port Au-*

*thority v. Pennsylvania Public Utility Commission,* 408 Pa. 169, 182 A. 2d 682 (1962).

There are several cases involving the Pennsylvania Turnpike Commission which are pertinent. Section 4 of the Turnpike Act of 1937, May 21, P. L. 774, No. 211 (36 PS §652d) states in pertinent part: "The commission is hereby constituted an instrumentality of the Commonwealth, and the *exercise by the commission of the powers conferred by this act* in the construction, operation and maintenance of the turnpike *shall be deemed and held to be an essential governmental function of the Commonwealth.*" (Emphasis supplied).

The above language is quite similar to that which appears in Article I of the Act of 1951 (36 PS §3503) quoted supra, establishing the Authority. Accordingly, the turnpike cases are relevant in a discussion of the instant situation.

In *Ewalt v. Pennsylvania Turnpike Commission,* supra, we held that although the Turnpike Commission is liable for continuing trespasses against plaintiff's property, it is an instrumentality of the Commonwealth and therefore immune from consequential damages.

Appellant cites *Lichtenstein v. Pa. Turnpike Commission,* 398 Pa. 415, 158 A. 2d 461 (1960) as support for its position that Authority is liable for consequential damages. In *Lichtenstein,* the court in an opinion by former Chief Justice CHARLES ALVIN JONES, held that in respect of liability for interest on claims against it, the Turnpike Commission is not to be equated with the Commonwealth and is liable for such interest. It is significant to note, however, that in *Wolf v. Commonwealth,* 403 Pa. 499, 170 A. 2d 557 (1961), we held that the Commonwealth itself is liable for the payment of interest on the amount of an award from the date of the award until the Commonwealth has actually paid the value of the property taken. So in ac-

tuality, the Commonwealth and the Commission are treated by the Court in an identical manner.

That the holding in the *Lichtenstein* case is restricted to the matter of liability for interest, the only question facing the Court therein, is made clear by two recent decisions. In *Delaware River Joint Toll Bridge Commission v. Carver,* 399 Pa. 545, 160 A. 2d 425 (1960), we concluded that a commissioner of the Delaware River Joint Toll Bridge Commission is a "public officer", and as such is not entitled to compensation unless authorized by statute, ordinance or specific agreement.

Finally, in *Rader v. Pennsylvania Turnpike Commission,* 407 Pa. 609, 182 A. 2d 199 (1962), just recently decided, we determined in an opinion by Chief Justice BELL, that the Pennsylvania Turnpike Commission is immune from liability in trespass for damages resulting from the negligence of its agents and employees. In the course of our opinion, we stated that "the Turnpike Commission is in many respects the alter ego of the Commonwealth." The same may be said for the Delaware River Port Authority.

In a recent decision relevant to the instant case, *International Longshoremen's Association v. Georgia Ports Authority,* 217 Ga. 712, 124 S.E. 2d 733 (1962), the Georgia Supreme Court held that the Georgia Ports Authority as an employer came within the provision of the National Labor Relations Act which exempts states and political subdivisions thereof from the jurisdiction of the National Labor Relations Board. In the course of its opinion, the Georgia Supreme Court stated: "[T]he operation of the Georgia Ports Authority *is action by the State for a public benefit.* The Ports Authority is a *creature of the State,* and in the operation of the docks, wharves, etc., it does so as the *instrumentality of the State* for governmental purposes as authorized by the Constitution." (Emphasis supplied).

(124 S.E. 2d at 736). The United States Supreme Court refused certiorari in this case—30 U. S. L. Week 3391 (1962).

Both Authority and the Turnpike Commission, as well as many of the other state agencies, were cast in their present form to provide a facility to finance the various projects entrusted to their care without running into the financial restrictions on the state debt limit imposed by Art. IX, §4 of the Constitution of 1874. It is reasonable to conclude that absent the constitutional restriction the functions of these authorities and commissions would be carried out by the executive branches of the government. In regard to the delegated functions involved in this litigation, Authority is to all intents and purposes synonymous with the Commonwealth. Its programs are those of the Commonwealth and its operations are subject to minute scrutiny by the proper Commonwealth officials. With the exception of its borrowing capacity, Authority simulates the Commonwealth.

Accordingly, there being no provision imposing liability upon the Authority for consequential damages in either the body or the title of the Act of 1951, nor, in our opinion, in the body of any of the predecessor acts (*McGarrity v. Commonwealth*, supra, notwithstanding), Authority is immune from liability for such consequential damages, absent an actual taking of property.

Order affirmed.

Mr. Justice MUSMANNO dissents.