### Koch v. Kistler

*John P. Lavelle, County Solicitor*, for plaintiffs.
*William B. Quinn*, for defendant.

HEIMBACH, *P. J.*, December 2, 1974—We are again called upon to determine a controversy existing between the board of commissioners and the controller. By stipulation, the parties have waived jury trial and agreed that the matter is to be decided by the court.

The dispute, involving $250.02, arises out of the controller's refusal to issue warrants, as being illegal, for the payment of an increase in salary granted by the salary board retroactively.

Summarized, the stipulated facts and testimony adduced are:

On January 7, 1974, the Carbon County Salary Board at a meeting created a department, primarily funded by the State and Federal governments, naming it the Bureau for the Aging, and established the positions of Executive Director at a salary of $8,000, and two caseworkers at salaries of $7,000. The duties and responsibilities of the personnel were delineated by the State and Federal bureaus operating through a county advisory coun-

cil. Leonard F. Marzen, Jr., was named director; Susan Rego and Daniel Carulli, the latter some time later, were named caseworkers. In early March 1974, the State and Federal bureaus made changes in the program, effective April 1, 1974, giving to the executive director and caseworkers different and additional duties; provided for an assistant director; changed the name to the Carbon County Area Agency on the Aging; and provided for a salary of $9,500 for the director, $8,000 for the assistant director, and $7,500 for each caseworker, and increased the grant of funds to provide for these changes.

As a result of the commissioners being apprised of the mandated changes in the program by the advisory council on or about April 26, 1974, a salary board meeting was convened on May 8, 1974. At such meeting, by unanimous action, the board abolished the Bureau for the Aging and the position of executive director, and established the Carbon County Area Agency on the Aging and the position of director, at a salary of $9,500 per annum, effective April 1, 1974, and by a three-to-one vote, the controller voting "no," establsihed the position of assistant director, at a salary of $8,000 per annum, effective April 1, 1974, and by a three-to-one vote, the controller voting "no," established the positions of two caseworkers and fixed the salaries at $7,500 per annum, effective April 1, 1974.

The former director was named as director and one of the caseworkers was named as the assistant director. The other caseworker continued as heretofore.

The controller has issued warrants for the payment of all salaries under the new schedule from May 1, 1974, but refuses to authorize the payment

of the difference accruing between April and May 1, 1974. Under the schedule adopted by the salary board, the difference owing is as follows:

| | |
|---|---|
| Leonard F. Marzen, Jr. | $125.00 |
| Susan Rego | 83.34 |
| Daniel Carulli | 41.68 |

Leonard F. Marzen, Jr., called as a witness, delineated the additional and changed duties that all of them were called upon to perform and did perform from April 1, 1974.

## DISCUSSION

Since funds received for the payment of the program are deposited in the general account of the county, they become county funds and salaries paid therewith are subject to the provisions of sections 1620 and 1623 of the County Code of August 9, 1955, P.L. 323, 16 P.S. §1620, §1623, providing for the fixing of salaries by the salary board: Bono v. Krommes, 201 Pa. Superior Ct. 449.

The controller argues that changing the name of the program and the positions and making the change retroactive may not be construed as a termination of the old program and the commencement of the new until acted upon by the salary board. We agree: Section 1623, supra, which provides:

"§1623.   Number and Compensation of Officers, Deputies, Assistants, Clerks and Employes

"The board, subject to limitations imposed by law, shall fix the compensation of all appointed county officers, and the number and compensation of all deputies, assistants, clerks and other persons whose compensation is paid out of the county

treasury (except employes of county officers who are paid by fees and not by salary), and of all court criers, tipstaves and other court employes, and of all officers, clerks, stenographers and employes appointed by the judges of any court and who are paid from the county treasury. Thereupon the number and compensation of all such officers, deputies, assistants, clerks and persons, whether fixed by statute or by any other method, are hereby repealed. In the event that any salary board shall fail to fix the number or compensation of any such officers, deputies, assistants, clerks or other employes as required by this section, the number and compensation shall continue, as fixed by or pursuant to law, on the effective date of this act, with like effect as though the same had been so fixed by the board, but the salary board shall have power to fix any such number or compensation at a later time and with like effect."

and section 1624, supra, which provides:

"§1624.  Revisions of Salary Schedules

"At each annual meeting, the board shall revise the salary schedule so far as it shall deem such action necessary. From time to time between annual meetings, whenever required by any judge, county officer or executive head of any separate board, commission or division, the number or compensation of whose deputies, assistants, clerks and employes is sought to be fixed, the board shall meet and consider and shall fix and determine the same. All salaries fixed under the provisions of this act shall be paid out of the county treasury in the manner provided by law."

Thus, it follows, as contended by the controller,

that until the salary board acted May 8,* 1974, the employes were serving as heretofore at the salaries fixed by the salary board January 7, 1974.

It is likewise settled law that one accepting a public office or position is presumed to do so with full knowledge of the law as to salary, compensation or fees; and all limitations prescribed must be strictly observed: 4 McQuillin, Municipal Corporations, §12.174c.

For the most part, the cases in Pennsylvania deal with claims for extra compensation by one having a fixed salary, either by law or contract, for services performed in addition to their usual and ordinary services, and when such claim is opposed, the courts have not allowed recovery. The reason is found in the statement of Justice Paxson in Rothrock v. Easton School District, 133 Pa. 487:

"When a public officer claims a salary, fees, or compensation for services rendered to the public, he must show an act of assembly giving it. If he cannot show such act, he cannot recover. The plaintiff's compensation as city controller was fixed by ordinance of councils. As controller, he is entitled to the compensation thus fixed, and nothing more."

Likewise, see Delaware River Joint Toll Bridge Co. v. Carver, 399 Pa. 545, 547, and cases cited therein; Lawson v. Allegheny County, 326 Pa. 242.

We accept and approve the principle of law that an action brought by one receiving a fixed salary, for additional compensation for claimed additional

---

*No reason has been given, in view of the controller's position, for retroactive payments approved by him to May 1, 1974.

services, may not recover, as being against public policy. We likewise approve and are guided by the principle of law that the State or political subdivision may legally pay a claim supported by a moral obligation and founded in equity and justice, even though not legally enforceable by the party who has such claim: Harbold v. Reading, 355 Pa. 253, 259.

In the instant case the commissioners have recognized the moral obligation involved in complying with the State and Federal mandate to change the name of the agency and abolish positions and recreate others, which resulted in additional duties on the part of the employes. The county received additional funds to pay for these changes, including the salary differences from April 1, 1974, and it would have been immoral for them to have withheld these moneys.

We paraphrase what was said in Walthour v. McDowell, 109 Pa. Superior Ct. 118, 133:

"[Commissioners] it is true are trustees and the law limits their expenditure of public money to public purposes, but they are also representatives of their constituents, and delegates of the county's legislative powers, and there is nothing in the law or in sound public policy to prohibit the [county] from being honest, and paying its bona fide debts which are good in conscience and justice, though for sufficient other reasons, there is a general rule which prevents them from being enforceable by law."

Likewise, see Bailey v. Philadelphia, 167 Pa. 569; Commonwealth, ex rel. v. Walton, 236 Pa. 220; Justice v. Philadelphia, 37 Pa. Superior Ct. 267, and those cases cited in the footnote of Harbold v. Reading, supra, 259.

The controller is chargeable with the same error he committed in the case of the Commissioners of Carbon County v. Kistler, 4 Carbon 255. He continues to fail to distinguish between supervision of the fiscal affairs of the county, the duty of his office, and the management of the fiscal policies of the county, which is exclusively the province of the commissioners. The court in Thayer, et al. v. McCaslin, Controller, 314 Pa. 553, at 557, puts it this way:

". . .'The controller shall have a general supervision and control of the fiscal affairs of the county, and of the accounts and official acts of all officers or other persons who shall collect, receive or distribute the public moneys of the county, or who shall be charged with the management or custody thereof.' This refers to the accounting side of the county's business, not the contracting and management part thereof. Controllers are not overlords of the other county officers . . . 'He . . . is not intrusted with the duty of making, or even of supervising the contracts of other departments. He is the city's head bookkeeper, and his office is to see that the various departments do not exceed their appropriations, nor apply them to purposes not within their proper scope . . .' . . . Where a statute has conferred upon certain officials the power to act with respect to a particular matter, the controller cannot nullify their acts by refusing to recognize a contract which they make. His duty in such circumstance is ministerial."

The controller's functions are set forth in section 1702 of the County Code, 16 P.S. §1702. This section only permits his refusal to authorize any fiscal transaction when:

A. The transaction is not authorized by law;

B. Has not received approval according to law;

C. He has reasonable grounds to investigate for fraud, flagrant abuse of public office or any criminal act or neglect of any officer or other person of the county relating to their public accounts and transactions.

The instant transaction, being one that is authorized by law (Bailey v. Philadelphia, supra), has been passed upon by the salary board, and there being no reason advanced by the controller to suggest fraud or a public abuse of office, etc., the controller, by refusing payment, has again acted without legal justification and contrary to law.

Wherefore, we enter the following

### ORDER

Now, November 21, 1974, judgment is entered in favor of plaintiffs. Defendant is directed forthwith to pay to Leonard F. Marzen, Jr., the sum of $125, to Susan Rego the sum of $83.34, and to Daniel Carulli the sum of $41.68, for services rendered.