Joseph Kennedy, Plaintiff *v.* Delaware River Joint Toll Bridge Commission, Defendant.

Argued December 1, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Jack Sirott,* for plaintiff.

*Robert W. Valimont,* with him *William E. Benner,* and *Power, Bowen & Valimont,* for defendant.

OPINION BY PRESIDENT JUDGE BOWMAN, March 11, 1976:

This matter is before us on preliminary objections in the nature of a demurrer by the Delaware River Joint Toll Bridge Commission (defendant) to a complaint in trespass filed by one Joseph Kennedy (plaintiff); the demurrer raises the issue of defendant's entitlement to sovereign immunity. In addition, this Court raised *sua sponte* the issue of our exclusive original jurisdiction over plaintiff's cause of action, notwithstanding an opinion of the Court of Common Pleas of Bucks County which transferred this case to us, holding it was without jurisdiction to entertain the same.

Plaintiff seeks damages for personal injuries suffered as a result of a one car crash on January 3, 1974. The mishap occurred when the vehicle operated by plaintiff went out of control while traveling west on the New Jersey side of the Lower Trenton Bridge and collided with the superstructure of said bridge. The bridge spans the Delaware River between Trenton, New Jersey and Morrisville, Pennsylvania, and is owned by the State of New Jersey and the Commonwealth and is operated and maintained toll free by the defendant. The accident allegedly resulted from negligent maintenance of the bridge by defendant.

By reason of defendant's demurrer and the jurisdictional question we have raised *sua sponte,* we, perforce, decide not only whether defendant is within the umbrella of sovereign immunity under the Pennsylvania Constitution,[1] but also whether it is the "Commonwealth" within the meaning of Section 401(a)(1) of the Appellate Court Jurisdiction Act of 1970[2] (ACJA); that section confers exclusive original jurisdiction upon this Court in all civil actions and proceedings against the Commonwealth

---

1. Pa. Const. art, I, §11.

2. Act of July 31, 1970, P.L. 673, *as amended,* 17 P.S. §211. 401(a) **(1).**

or any officer thereof except as to several classes of actions not here relevant.

In the past, sundry legislatively created entities in our governmental structure have been accorded diverse treatment as to their status as the "Commonwealth" for purposes of fixing the jurisdiction of this Court depending essentially upon the particular statute creating the instrumentality.[3] Concurrently, sovereign immunity has been under heavy attack as an acceptable doctrine in our time and in its application to particular governmental entities. Somewhat unusual and far reaching results have emerged, not the least of which is the issue of whether instrumentalities of the Commonwealth for purposes of our exclusive original jurisdiction are necessarily equated with those legislatively created instrumentalities which enjoy sovereign immunity. In our considered judgment, we believe they must be and decide the issues accordingly.

At the outset, therefore, we must carefully examine the statutory law creating the Delaware River Joint Toll Bridge Commission and defining its powers and duties. Defendant was originally constituted by the Act of May 8, 1919, P. L. 148, *as amended*, 36 P. S. §3272, to acquire toll bridges across the Delaware River north of Philadelphia. Of the five Pennsylvania members of the defendant Commission, three are executive officers of the Commonwealth, thereby stamping it with the imprint of our state government. Later, the Delaware River Joint Toll Bridge Commission was formally created by a compact[4] between the Commonwealth and the State of New Jersey, which elaborates its purposes, powers and duties. Article I of the compact provides:

"The commission shall constitute the public corporate instrumentality of the Commonwealth of Penn-

---

3. *See Levine v. Redevelopment Authority of the City of New Castle*, 17 Pa. Commonwealth Ct. 382, 333 A.2d 190 (1975).

4. Act of June 25, 1931, P.L. 1352, *as amended*, 36 P.S. §3401.

sylvania and the State of New Jersey for the following public purposes, and shall be deemed to be exercising an essential governmental function in effectuating such purposes. . . ."

Basically, these purposes are the maintenance and operation of bridges across the upper Delaware River.

Article IV of the compact prevents the defendant from creating any debt on behalf of the Commonwealth; however, with reference to toll free bridges operated by defendant, the General Assembly contributes one-half of the funds for the operation of such bridges. 36 P. S. §3278. In summary, the legislative language established an independent commission to perform certain governmental functions for the Commonwealth, using, in part, appropriations of the General Assembly.

We reject plaintiff's argument that conflict of laws' principles make New Jersey law applicable in determining defendant's status. To do so, would nullify the mandate of our Constitution. Pursuant to Article I, Section 11 of the Pennsylvania Constiution, it is clear that suits may not be brought against the Commonwealth without express legislative consent. *Biello v. Pennsylvania Liquor Control Board*, 454 Pa. 179, 301 A.2d 849 (1973). Here, we hold that defendant is within the class of instrumentalities of the State protected by sovereign immunity.

Our conclusion is buttressed by the Supreme Court's extension of the doctrine of sovereign immunity to the Delaware River Port Authority in *Anderson Appeal*, 408 Pa. 179, 182 A.2d 514 (1962). The Delaware River Port Authority, formerly the Delaware River Joint Commission, was created by a compact quite similar to that establishing the defendant.[5] The Port Authority compact uses language identical to the language quoted from 36 P. S. §3401 in creating the Delaware River Port Authority as a public corporate instrumentality of the Commonwealth

---

5.  Act of June 12, 1931, P.L. 575, *as amended*, 36 P.S. §3503.

and the State of New Jersey. In *Anderson,* the Supreme Court rejected arguments that the Port Authority was a mere public corporation and found it to be an agency of the Commonwealth carrying out an execution function. We think this holding applies with equal force to this defendant, and the following language in *Anderson* is particularly applicable to this case:

"A reading of the provisions ... leaves no doubt that the legislature intended to make Authority a vital arm of the Commonwealth of Pennsylvania carry on an essential governmental function. Moreover, as an analysis of the provisions of the compact reveals, Authority in performing its duties is strictly controlled by and responsible to the legislatures and the governors of the two states." *Anderson Appeal, supra,* 408 Pa. at 184, 182 A.2d at 516-17.

*Anderson* suggests that the Port Authority, among other agencies, was delegated certain duties to avoid constitutional debt limitations of the Commonwealth,[6] but in all other respects is synonymous with the Commonwealth. We also extend this reasoning to defendant. The Superior Court has recently reaffirmed the immunity of the Port Authority in *Yancoskie v. Delaware River Port Authority,* 235 Pa. Superior Ct. 263, 340 A.2d 533 (1975) and *Enoch v. Food Fair Stores, Inc.,* 232 Pa. Superior Ct. 1, 331 A.2d 912 (1974).

Plaintiff urges that the recent case of *Specter v. Commonwealth,*     Pa.     , 341 A.2d 481 (1975), controls, and that defendant, like the Turnpike Commission, is not the "Commonwealth" and hence, not immune from tort claims. However, in *Specter,* the Supreme Court stressed the financial independence of the Commission in stripping it of its sovereignty. In the case at hand, the defendant possesses no such independence and does receive support

---

6. Pa. Const. art. VIII, §7, *formerly* Pa. Const. art. IX, §4 (1874).

from the Commonwealth in maintaining bridges such as the Lower Trenton Bridge. 36 P. S. §3278. Further, defendant operates bridges owned by the two states, while the Turnpike Commission acquires and maintains real property in its own name.[7]

In conslusion, the *Specter* decision rested upon the financial independence of the Turnpike Commission which allowed the Supreme Court to conclude "that the Commission is *separate and apart* from the Commonwealth and therefore may be treated differently." *Specter, supra,* Pa. at  , 341 A.2d at 490. (Emphasis added.) Although the legislature has chosen to give a measure of independence to the defendant, its financial ties to the Commonwealth make *Specter* inapposite and dictate our holding that the defendant is the "Commonwealth" and is surrounded by the cloak of sovereign immunity.

With respect to our jurisdiction, as stated earlier in this opinion, our finding that the defendant enjoys sovereign immunity suggests the conclusion that it is also the "Commonwealth" for purposes of the ACJA. Likewise, it would also appear that any entity not entitled to sovereign immunity would not be within the meaning of "Commonwealth" as defined by the ACJA, 17 P. S. §211.102(a)(2); therefore, exclusive original jurisdiction over such entities would then not lie in this Court.

We recognize that other agencies have been found by this Court not to be the "Commonwealth" despite apparently contrary language in their enabling statutes. *Southeastern Pennsylvania Transportation Authority v. Kohn,* 18 Pa. Commonwealth Ct. 546, 336 A.2d 904 (1975). This is not such a case. Defendant's status may be compared to the Pennsylvania Higher Education Assistance Agency (PHEAA) in *Richmond v. Pennsylvania Higher Educa-*

---

7. Pennsylvania Turnpike Philadelphia Extension Act, Act of May 16, 1940, Extra Sess., P.L. (1941) 949, *as amended,* 36 P.S. §653g.

*tion Assistance Agency,* 6 Pa. Commonwealth Ct. 612, 297 A.2d 544 (1972), where we found PHEAA to be the "Commonwealth" as defined in the ACJA. PHEAA was created as a public corporation and instrumentality of the Commonwealth[8] and, like the defendant, lacks power to pledge the credit of the Commonwealth but does receive appropriations from the legislature to partially fund its operations. In summary, defendant is within the contemplation of the term "commission" as used in the ACJA, 17 P. S. §211.102(a)(2), and consequently, exclusive original jurisdiction over this matter resides in this Court.

Therefore, for the foregoing reasons, we enter the following

ORDER

Now, March 11, 1976, the preliminary objections of the defendant are sustained and the complaint of Joseph Kennedy is dismissed.

---

8. Act of August 7, 1963, P.L. 549, *as amended,* 24 P.S. §5101.